JOVITA HERNÁNDEZ VIUDA DE SAMBOLÍN, JOSÉ ALFREDO SAMBOLÍN PÉREZ, JOSSIE SAMBOLÍN PÉREZ, OTTO IRIZARRY SAMBOLÍN, ARTALDO QUIÑONES SAMBOLÍN, ANA LIVIA SÁNCHEZ SAMBOLÍN, MERCEDES SÁNCHEZ SAMBOLÍN, MIGUEL ÁNGEL SAMBOLÍN ALSINA, LIVIA SAMBOLÍN ALSINA VIUDA DE ORTIZ, SIFREDO SAMBOLÍN ALSINA y JOSÉ RAMÓN FIGUEROA SAMBOLÍN, recurrentes, *v.* REGISTRADOR DE LA PROPIEDAD DE PUERTO RICO, SECCIÓN DE SAN GERMÁN, recurrido.

*Número:* G-66-4      *Resuelto:* 20 de abril de 1967

*Francisco Parra Toro, Waldemar del Valle López* y *Carlos M. Franco Soto,* abogados de los recurrentes; el Registrador recurrido compareció por escrito.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Los recurrentes son herederos y legatarios en la herencia de Don Santiago Sambolín Becchi fallecido el 14 de septiembre de 1959 bajo testamento, sin que dejara en su sucesión herederos forzosos excepto su viuda en el usufructo que dispone la ley.—Código Civil, ed. 1930, Art. 736—En su testamento hizo en favor de su esposa y de otras personas ciertos legados, y en el remanente de todos sus bienes y derechos instituyó como únicos y universales herederos a su esposa Doña Jovita Hernández y a sus ocho sobrinos mencionados en la proporción de un 50% de todos dichos bienes y derechos para la esposa y el restante 50% para los ocho sobrinos en la proporción que determinó en el testamento.

Al hacerse las operaciones particionales se le dio a los bienes relictos un valor neto de $606,899.19, excluidos los gananciales de la cónyuge supérstite. En dichas operaciones particionales correspondió a la viuda en pleno dominio como legataria la cantidad de $177,140 y le correspondió también como heredera universal según el testamento, la suma de $182,924.59, para un total en pleno dominio de $360,064.59.

A los demás causahabientes correspondió en pleno dominio a título de herederos universales y legatarios la cantidad remanente de $246,834.60.

Hecha la adjudicación de los bienes de la herencia para el pago a los herederos y legatarios que son todos los recurrentes de epígrafe de sus respectivas participaciones, y presentado el cuaderno particional al Registro de la Propiedad, el Registrador inscribió los bienes inmuebles adjudicados a los ocho sobrinos y dos legatarios "sin perjuicio del derecho de cuota usufructuaria correspondiente a la viuda Jovita Hernández." Los sobrinos y legatarios recurrentes, entre quienes comparece la propia viuda Jovita Hernández, sostienen que el Registrador cometió error al inscribir los bienes que les fueron adjudicados sujeto al derecho a la cuota usufructuaria correspondiente a la cónyuge viuda, y nos piden —la propia viuda también— que ordenemos la inscripción de los bienes libres de dicho derecho de usufructo.

En la escritura de partición los herederos hicieron constar lo siguiente:

*"Aclaración Respecto a la Cuota Viudal Usufructuaria:*

Hacen constar los comparecientes que en su testamento relacionado anteriormente en esta escritura, don Santiago Sambolín Becchi nada dispuso respecto a derecho usufructuario alguno a favor de su cónyuge viuda, la compareciente doña JOVITA HERNÁNDEZ VIUDA DE SAMBOLÍN y las disposiciones del Artículo Setecientos Sesenta y Cuatro (764) del Código Civil de Puerto Rico, equivalente a la Sección Dos Mil Cuatrocientos Catorce (2414) del Título Treinta y Uno (31) de las Leyes de Puerto Rico Anotadas que establece que cuando el testador no dejare descendientes, ni ascendientes legítimos, como en el presente caso ocurre, el cónyuge sobreviviente tendrá derecho a la mitad ($\frac{1}{2}$) de la herencia en usufructo, ha quedado cumplida por razón de haber sido instituida la referida cónyuge viuda, heredera por cantidad igual en pleno dominio, o sea en un cincuenta por ciento (50%) de la herencia, con cuya porción hereditaria ha quedado cubierta y pagada la mitad que en usufructo le corresponde. En virtud de lo expuesto, los bienes de la herencia a que

esta escritura se contrae no quedan afectos al pago del usufructo viudal que · por ley corresponde a la cónyuge viuda, y en su consecuencia solicitan los comparecientes de los señores Registradores de la Propiedad correspondientes, que sobre los inmuebles descritos en esta escritura no quede mención alguna de la referida cuota usufructuaria a favor de la cónyuge viuda."

■ Son supuestos de ley en este caso aplicables: El Art. 764 del Código Civil, ed. 1930, que dispone que si el testador no dejare descendientes ni ascendientes legítimos— en este caso no dejó ascendiente o descendiente alguno—el cónyuge sobreviviente tendrá derecho a la mitad de la herencia, en usufructo. El Art. 765 que le sigue estatuye la forma en que los herederos podrán satisfacer al cónyuge su parte de usufructo, y dispone en su segunda oración que mientras esto no se realice, estarán afectos todos los bienes de la herencia al pago de la parte de usufructo que corresponda al cónyuge viudo. De ahí, la reserva de usufructo que, según su posición en este caso, hizo el Registrador al inscribir los bienes de los demás herederos. Hemos dicho que el usufructo es la legítima del cónyuge viudo, *Luce & Co.* v. *Cianchini*, 76 D.P.R. 165 (1954), por cuanto conforme al Art. 735 del propio Código, la legítima es la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos; y según el Art. 736, el viudo o viuda es un heredero forzoso en cuanto al derecho de usufructo que establecen los Arts. 761, 762, 763, y el 764 ya mencionado, que rige en este caso.

■ Dispone el Art. 746 del Código Civil que para fijar la legítima, que en este caso no es sino el usufructo reservado por ley a la viuda, se atenderá al valor de los bienes que quedaren a la muerte del testador con deducción de las deudas y cargas, sin comprender entre ellas las impuestas en el testamento. Conforme a este artículo y producido un caudal relicto neto ascendente a $606,899.19, corresponde en ley a

la viuda por razón de su legítima la cantidad de $303,449.60, en usufructo. La viuda recibió como heredera, y como legataria, un valor de $360,064.59, en plena propiedad.

■ La posición del Registrador es que no importa lo que el testador dejó a la viuda en plena propiedad, en este caso en exceso de la mitad de la herencia, aún la viuda tiene derecho en adición, a la mitad de la herencia en usufructo. La posición de los recurrentes, la propia viuda, es que habiéndole dejado el testador más de la mitad de la herencia en plena propiedad, y no meramente en usufructo, no hubo quebrantamiento del Art. 764, ni de las disposiciones sobre la legítima de la viuda como heredera forzosa.

Establece el Art. 743 que el heredero forzoso a quien el testador haya dejado *por cualquier título* menos de la legítima que le corresponda, podrá pedir el complemento de la misma. Ante los hechos expuestos, no vemos cómo la viuda, si su posición fuera otra, podría invocar con éxito lo dispuesto en este Artículo y exigir un complemento de su legítima a base de que el testador le dejara menos de la legítima que le reserva la ley. La posición del Registrador, de sostenerse, conduciría a una interpretación y alcance del Art. 735 definitorio de la legítima y del 764 que en realidad no tienen.

■ Hay que leer el Art. 735 conjuntamente con el Art. 692 que es aquel con el que comienza la institución de heredero. Dispone este artículo que el que no tuviere herederos forzosos, *puede disponer* por testamento de todos sus bienes en favor de cualquiera capaz para adquirirlos, pero, el que tuviere herederos forzosos *sólo podrá disponer* de sus bienes en la forma y con las limitaciones que establece el Código. Se verá, pues, que este Art. 692 y el 735 son en derecho limitaciones a la libertad total de disposición del testador, al *jus disponendi*, quien deberá respetar dentro de su libertad de disponer, ciertos derechos mínimos que el Estado asegura

a determinadas personas a quienes declara ser herederos forzosos. ([1])

En lo que respecta en particular al cónyuge viudo, observa Santamaría,—op. cit. al margen—a la pág. 796:

"El viudo o viuda pueden ser llamados a la herencia de su consorte como usufructuarios de cuota o parte alícuota, o como sucesores a título universal o de herederos propiamente dichos, que asumen todos los derechos y obligaciones del 'de cujus' tanto en la sucesión testamentaria como en el caso previsto en el art. 952 para la intestada. (S. 9 junio 1949)"([2])

Refiriéndose luego a la "inviolabilidad de la legítima", comentando en torno al Art. 813 Español, igual al 741 nuestro que disponen que el testador no podrá privar a los herederos de su legítima sino en los casos expresamente determinados por ley, dice Santamaría que "el principio de la inviolabilidad de la legítima que el presente artículo proclama es consecuencia de lo que establece el Art. 763 en su segundo párrafo." (pág. 805) El Art. 763 corresponde al Art. 692 de nuestro Código, y ya dijimos éste es sólo una limitación a la libertad de disponer del propio testador.

Sobre la violación de la legítima y la acción para su complemento,—Art. 743, ed. 1930 igual al 815 Español— observa además el autor: (pág. 808)

---

([1]) Dice Santamaría: "Significa la legítima una limitación al principio de libertad de disposición consagrado por el Art. 763. [692 nuestro]"

"Las normas de la sucesión de los legitimarios—dice Messineo (III, 2ª, 197)—son normas de orden público, y por tanto, de 'jus cogens' o inderogable; pero al propio tiempo, deben considerarse de interpretación estricta por ir contra la libertad testamentaria." Comentarios al Código Civil, (1958) Tomo I, pág. 795.

([2]) Dice la Sentencia del Tribunal Supremo de España de 9 de junio de 1949: ". . . [a] tenor de lo dispuesto en los artículos 763, 807 (número 3.°), 834 al 837 y 952 del Código civil, el viudo o viuda pueden ser llamados a la herencia de su consorte como usufructuarios de cuota o parte alícuota, que les inviste el carácter de herederos 'sui generis', similar al de acreedor o legatario 'ex-lege', que no responden de las deudas del causante, y pueden también participar en la herencia como sucesores a título universal o de herederos propiamente dichos, que asumen todos los derechos y obligaciones del 'de cuius' . . . ."

"La acción que de este precepto se origina a favor del heredero forzoso es la conocida de antiguo con los nombres de 'expletoria' o 'ad suplementum', acción a la que, como expresa Castán (6ª ed., IV, 581) recogiendo la opinión de Manresa y Valverde, reconocen la mayoría de los intérpretes carácter real.

"El presente artículo [Art. 743, ed. 1930] tiene aplicación siempre que un *heredero forzoso* haya sido llamado por el testador, *ya a título universal ya a título singular* a una porción hereditaria *inferior a la que le corresponde* con arreglo a lo que dispone el Art. 818, [Art. 746 nuestro] pues cuando no hay disposición testamentaria ninguna a su favor se está en el caso del Art. 814 [Art. 742] y no en el del presente." (³)

Hasta aquí, y como cuestión de orden público inderogable como es la legítima reservada por ley contra el *jus disponendi* absoluto del testador, no existe preterición alguna de los derechos del cónyuge supérstite en este caso, ni existe tampoco un *quantum* menor de la parte que por ley le corresponde. Art. 743.

■ No obstante la conclusión anterior, hay que tomar en cuenta que la voluntad del testador es la ley de la sucesión. Veamos si acorde con el testamento de don Santiago Sambolín Becchi al Registrador le asiste la razón por esta otra consideración. Dijimos que le dejó a su viuda legados específicos en plena propiedad por el monto de $177,140. Observa Castán a tenor del Art. 660 Español—igual al 609, ed. 1930—que llama legatario al que sucede a título particular, que "se infiere que el legado es, para el Código, una forma de suceder *mortis causa* a título singular, o sea en bienes o derechos particulares de una persona." (⁴) Le dejó la plena propiedad de la mitad del remanente de la herencia

_____

(³) Véanse Sentencias del Tribunal Supremo de España de 6 de mayo de 1891; 28 de enero de 1919; 24 de junio de 1927; 22 de mayo de 1950; 19 de enero de 1950.

(⁴) *Derecho Civil, Común y Foral*, 6ta. ed. 1944, Tomo 4, pág. 583. Ya está definitivamente sentado en la doctrina que el viudo tiene la cualidad de ser heredero o sucesor de su consorte. Id. pág. 541.

después de los legados, por un monto de $182,924.59 para un total de $360,064.59 en plena propiedad, $56,614.99 en exceso de la mitad de toda la herencia. El punto es si fue la intención del testador dejar en adición a la viuda el usufructo sobre el remanente de $246,834.60 que correspondió a los demás herederos.

Al instituir el testador como únicos y universales herederos a su esposa doña Jovita Hernández en la proporción de un 50% de todos sus bienes y derechos después de los legados y en el restante 50% a sus sobrinos, en momento alguno el testador hizo mención de usufructo, ni para cualificar lo dejado al cónyuge viudo limitando su participación, ni para cualificar tampoco lo dejado a los otros herederos, limitando la de éstos.

Si consideramos que dejó a su viuda muy en exceso de su legítima, en ausencia de una intención más claramente expresada no nos parece que fuera intención suya el gravar la herencia de sus sobrinos con el usufructo viudal. Resuelve el Tribunal Supremo de España en Sentencia de 3 de junio de 1947 que no puede deducirse que lo dejado por el testador en concepto de legado en favor de un heredero forzoso haya de computarse *siempre a su legítima.* Esta expresión ocurre ante los siguientes hechos:

Fue una acción de un heredero contra la viuda para que se declarara que un legado a favor de la viuda debía imputarse a su legítima. Se trataba de un testamento en que el causante legaba en propiedad a su esposa determinados bienes con la condición de que si ella contraía segundas nupcias el legado quedaría sin efecto, pasando entonces los bienes legados a favor de un heredero. En el remanente de la herencia, después de disponer otros legados, declaró único y universal heredero a su padre. La cuestión planteada en el litigio era si en virtud de dicho testamento la viuda tenía derecho a percibir de la herencia sólo el legado o si además

del legado tenía derecho a la cuota legal en usufructo que como cónyuge viudo le correspondía. Se dice en la Sentencia que de la cláusula testamentaria por la que el testador instituyó el legado en favor de su viuda se deducía que era una preocupación de aquél la posibilidad de que ésta contrajera un segundo matrimonio, y por eso hizo depender la eficacia del legado de que tal matrimonio no llegara a contraerse; y que si el testador, para que su viuda pudiera beneficiarse con el legado, limitaba su libertad de una manera tan importante y trascendental, no solamente en el orden de los afectos sino en el de las conveniencias materiales que pudiera obtener, cosa que la privaba de la posibilidad de mejorar su situación económica mediante nuevas nupcias, era más lógico presumir que quiso otorgar el legado con plena liberalidad y que su viuda lo obtuviera sin limitación alguna, más que atribuirle la intención de restringirlo imputándolo a la legítma viudal, pues si tal hubiera sido la voluntad del testador, dada la condición a que subordinaba la efectividad del legado, era natural que lo hubiera declarado expresamente.

Se sostiene en esta Sentencia que no puede deducirse que lo dejado por el testador en concepto de legado en favor de un heredero forzoso haya de computarse *siempre* a su legítima, citándose Sentencia de 21 de febrero de 1900. Se concluye que cuando la voluntad del testador no se haya manifestado claramente en sentido opuesto, el Art. 815 (Art. 743 nuestro), no impide que se acumule con la herencia forzosa lo voluntariamente dejado, y se aplicó esta doctrina en ese caso ante los hechos y circunstancias del mismo. [5]

█ Nada hay en el testamento en este caso que asimile la situación de hecho de la anterior Sentencia e invite a igual

_____

[5] Sentencia de 3 de junio de 1947; Rep. Jurisp. Aranzadi, 903.

conclusión.(⁶) Por el contrario, la propia viuda y los demás herederos interpretaron el testamento como hemos concluido, según acredita la cláusula Vigesimasexta del Cuaderno Particional anteriormente transcrita. Dispone el Art. 1011, ed. 1930, que cuando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, *si los herederos fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente.* Véase el Art. 604, Código Enj. Civil, ed. 1933.

■ No habiendo el testador infringido en ley los derechos del cónyuge viudo, bien por preterición o bien por merma de su legítima, no siendo aparente, a la luz de las circunstancias y disposiciones testamentarias que fuera su intención gravar con un usufructo a favor de la viuda los bienes de sus demás herederos, en adición a la herencia que le dejara en plena propiedad en exceso de la mitad de la misma, los bienes de los herederos no responden en este caso de usufructo alguno. Por lo tanto, no procede la reserva de usufructo viudal que hizo el Registrador al inscribir dichos bienes.

■ Sostiene el Registrador en un segundo pensamiento que la aceptación de la viuda del Cuaderno Particional equivale a una renuncia de ella a su derecho de usufructo, y que los herederos no han pagado contribución de herencia por el valor de tal usufructo. Ya concluimos como cuestión de derecho y como cuestión de la voluntad testamentaria que no existía un usufructo a favor de la viuda sobre la herencia que correspondió a los sobrinos. El Secretario de Hacienda parece que lo entendió de igual manera y no impuso contribución alguna a base de tal renuncia de usufructo. Asu-

---

(⁶) El testador manifestó al constituir los legados de la viuda que lo hacía en consideración a la ayuda prestada en el desarrollo y fomento del capital que en su mayoría era ganancial. Sin embargo, el récord demuestra que de un total de bienes dejados de $948,029.95, sólo $298,329.19 eran gananciales.

miendo que en las circunstancias dichas ello forme parte del poder de calificar del Registrador, que aquí iría a los méritos, el hecho es que el Registrador no se ha negado a inscribir, como correspondería hacerlo de no presentarse el recibo de la contribución. Por el contraria, inscribió los bienes aunque sujeto a la expresión de reserva usufructuaria. El planteamiento no tiene consecuencia en este momento.

*Se revocará aquella parte de la nota del Registrador en la que expresa que inscribe los bienes de los recurrentes "sin perjuicio del derecho de cuota usufructuaria correspondiente a la viuda Jovita Hernández" y se ordena que dicha reserva quede eliminada de la inscripción.*