BLANCA RAMONA BLANCO DE JESÚS, demandante y recurrida, *v.* LA SUCESIÓN DE DON JOSÉ MARÍA BLANCO SANCIO–CEDRÓN ET AL., demandados y recurrentes.

*Número:* R-77-226        *Resuelto:* 8 de noviembre de 1977

472

*Fiddler, González & Rodríguez* y *Federico Tilén,* abogados de los demandados y recurrentes; *José A. de la Texera,* abogado de la recurrida.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

José María Blanco falleció el 2 de enero de 1975 bajo testamento abierto que había otorgado el 17 de agosto de 1966, mediante escritura Núm. 50 ante el notario Lic. Mario Orsini Martínez. Sucedieron al testador su viuda Eva González, dos hijas procreadas en su único matrimonio llamadas Carmen Elena y Eva Manuela Blanco; dos hijos procreados con Concepción De Jesús, llamados Blanca y José Angel Blanco; y por llamamiento a la herencia sus nietos Lope José y José Ramón Hormazábal (hijos de Carmen Elena), y José Antonio y Flor Mary García (hijos de Eva Manuela). En lo pertinente a esta acción de inoficioso testamento disponen las cláusulas del otorgado por José María Blanco:

"Cuatro: Declara que como resultado de sus relaciones amorosas con doña Concepción de Jesús nacieron dos hijos llamados Blanca Blanco De Jesús y José Angel Blanco de Jesús, ambos ya mayores de edad. Aclara el TESTADOR que su hija Blanca Blanco de Jesús, siendo hija ilegítima y habiendo nacido antes del año mil novecientos cuarenta y uno, tenía derecho a pensión alimenticia y reconocimiento pero no a herencia y que a tales efectos dictó sentencia El Honorable Tribunal Superior de Puerto Rico, Sala de Ponce en un caso sobre Filiación y Alimentos inter-

puesto contra él por doña Concepción De Jesús en representación de sus referidos hijos en el expresado Tribunal.

CINCO: Declara que su matrimonio antes expresado fue su único matrimonio y que aparte de los hijos habidos en dicho matrimonio mencionados en el hecho número dos de este TESTA-MENTO y de los dos hijos ilegítimos mencionados en el hecho cuarto, el TESTADOR no tiene ningún otro hijo legítimo, ilegítimo, natural o reconocido, siendo los antes mencionados sus únicos hijos.

SEIS: Declara que sus únicos y universales herederos son sus hijos legítimos Carmen Elena Blanco González y Eva Manuela Blanco González y su hijo reconocido José Angel Blanco de Jesús.

SIETE: Declara que posee bienes muebles e inmuebles que no es preciso enumerar por ser bien conocidos de todos sus herederos.

OCHO: Declara que a su muerte, es su voluntad, que sus bienes sean repartidos en la forma siguiente:

A.—DISPONE que el tercio perteneciente a la LEGITIMA sea dividido por partes iguales entre sus herederos, conforme lo dispone la LEY.

B.—DISPONE, que el TERCIO del caudal hereditario destinado para mejorar los herederos, sea dividido en partes iguales entre sus dos hijas Carmen Elena Blanco González y Eva Manuela Blanco González.

C.—DISPONE, que el TERCIO del caudal hereditario de LIBRE DISPOSICION sea repartido en partes iguales entre sus nietos Lope José Hormazabal Blanco y José Ramón Hormazabal Blanco, hijos de José Hormazabal Ruival y Carmen Elena Blanco González, y sus nietos José Antonio García Blanco y Flor Mary García Blanco, hijos de Joaquín García Valdés y Eva Manuela Blanco González."

La hija natural Blanca Blanco impugnó el testamento por habérsele preterido, y el 13 de mayo de 1977 la Sala de Humacao del Tribunal Superior dictó sentencia sumaria anulando la institución de herederos y abriendo la sucesión intestada respecto a la legítima estricta y el tercio de libre disposición asignado a los cuatro nietos. Recurrieron los herede-

ros favorecidos por el testador y expedimos auto de revisión el 15 de julio último.

Dos son los planteamientos en que fundan los recurrentes su recurso: 1° que no ha habido preterición de la demandante, toda vez que su exclusión como heredera fue expresa y no por simple omisión de su nombre, por lo que no procede la anulación del testamento (Art. 742 Código Civil), sino el complemento de la legítima ordenado por el Art. 743 del Código Civil; y 2° que aún estando en orden la anulación de la institución de heredero, debe respetarse como manda o legado la adjudicación del tercio libre a los nietos a tenor del primer párrafo del Art. 742 del Código Civil que dispone:

"La preterición de alguno o de todos los herederos forzosos en línea recta, sea que vivan al otorgarse el testamento o sea que nazcan después de muerto el testador, anulará la institución del heredero; pero valdrán las mandas y mejoras cuando no sean inoficiosas." 31 L.P.R.A. sec. 2368.

## I

La preterición de heredero se funda en un concepto económico patrimonial. Consiste en no dejarle nada[1] en el testamento, porque si algo le otorgara, se trataría del caso del Art. 743, de complemento de legítima.

"[La preterición] se define por Royo Martínez como la 'inexistencia total de disposición patrimonial de un heredero forzoso en línea recta, nacido ya o meramente concebido al tiempo de la muerte del testador'.

El acto de privar totalmente de su legítima a un heredero forzoso puede tener efecto de dos modos: expresa o tácitamente.

La privación expresa de la legítima constituye la *desheredación*. La privación tácita de la misma se denomina *preterición*.

---

[1] Scaevola, *Código Civil*, Tomo 14, pág. 420, Cuarta Ed. (1944); cf. *Cortés* v. *Cortés*, 73 D.P.R. 693 (1952).

■ El testador puede desheredar a sus herederos forzosos en testamento y en virtud de una justa causa de las consignadas en la ley que resulte cierta y pueda probarse caso necesario. La desheredación en esta forma priva legalmente al legitimario de su derecho a legítima.

La preterición consiste en omitir al heredero en el testamento. O no se le nombra siquiera, o aun nombrándole como padre, hijo, etc., no se le instituye heredero ni se le deshereda expresamente, ni se le asigna parte alguna de los bienes, resultando privado de un modo tácito de su derecho a legítima." Manresa, *Comentarios al Código Civil Español,* Tomo VI, Vol. 1, págs. 646–47, Ed. 1973.

■ La demandante recurrida, si bien fue recordada y mencionada en el testamento de su padre como la hija que hubo de reclamar filiación y alimentos por la vía judicial, ninguna participación recibe en la herencia, y por el contrario fue excluida como heredera en el párrafo Seis del testamento y omitida en el Ocho (A) donde el testador distribuye la legítima estricta. Negar su preterición es vano ejercicio.

## II

■ Los recurrentes reclaman que la disposición del testador en el párrafo Ocho (C) del testamento al efecto de "que el TERCIO del caudal hereditario de LIBRE DISPOSICION sea repartido en partes iguales entre sus [cuatro] nietos . . . ." es un legado al que no afecta la nulidad de la institución de heredero porque el Art. 742 del Código Civil ordena que "valdrán las mandas [2] y mejoras cuando no sean inoficiosas." El planteamiento revive un debate doctrinario sobre la figura intermedia o *sui generis* del legado de parte alícuota (aludido indirectamente en el Art. 597), encauzado por criterios históricos de interpretación en pugna: el romano, de matiz subjetivo, y el llamado germánico o

---

(2) Manda y legado son sinónimos.

moderno de signo objetivo, cuestión que halló reposo en *Vivaldi* v. *Registrador*, 86 D.P.R. 629, 641 (1962), donde este Tribunal siguiendo a Mario Díaz Cruz, Bonet Ramón, Ferrara, Manresa y Ossorio Morales calificó como "heredero" al legatario de parte alícuota; y de Ossorio tomamos la cita a la pág. 641: ". . . [C]uando se haga un llamamiento en parte alícuota, cualquiera que sea la fórmula empleada por el testador y aunque éste haya empleado la palabra legado, al disponer de una cuota abstracta, de una unidad ideal—independiente de su contenido material—el testador ha revelado *que su intención fue transmitir una universalidad*, realizar una transmisión a título universal, y, por consiguiente designar un heredero." *Vivaldi* tiene firme base en el Art. 609 (31 L.P.R.A. sec. 2091) que llama "heredero" al que sucede a título universal, y "legatario" al que sucede a título particular; en el 697 del Código Civil (31 L.P.R.A. sec. 2286) que declara que el heredero instituido en una cosa cierta y determinada será considerado como legatario; y aun en el Art. 617 (31 L.P.R.A. sec. 2122) en su prevención para que en caso de duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto valdrá la disposición como hecha a título universal o de herencia. *Cf. Gandía* v. *Registrador*, 93 D.P.R. 213, 217 y ss. (1966). La distribución ordenada por Blanco en su testamento muestra con claros perfiles su intención de mantener prácticamente toda la *herencia*, en poder de sus hijas de matrimonio Carmen Elena y Eva Manuela y de sus nietos hijos de éstas. No varía el lenguaje que utiliza para asignar las porciones: que el tercio de legítima corta "sea dividido por partes iguales entre . . . "; que el de mejora "sea dividido en partes iguales entre . . ."; y que el tercio libre "sea repartido por partes iguales entre . . . ." No obstante declarar en el párrafo Siete del testamento que no precisa enumerar sus bienes tanto muebles como inmuebles "por ser bien conocidos de todos sus herederos", el testador no hace legado

singular de entre esos bienes a sus nietos, y por el contrario, les deja una porción abstracta, sujeta a liquidación y determinación particional, como lo están los otros dos tercios de la masa hereditaria. No llega el testador ni a la expresión mínima de dar título de *legado* a la cuota de sus nietos. La disposición en favor de éstos, que tiene por objeto una cuota de parte de la herencia, debe considerarse como institución de heredero. ". . . [C]uando el causante asigna a una persona una cosa o cantidad determinada, desde luego se comprende que su intención es favorecerla tan sólo en aquello que le asignó y, por el contrario, cuando le llama al goce del remanente de la herencia o de una cuota indeterminada de ella, implica dicho llamamiento que su voluntad fue hacerle su heredero, transmitiéndole con la institución su personalidad jurídica." Manresa, *Comentarios al Código Civil Español*, Tomo V, Ed. Séptima (1972), pág. 434.

■ "Heredero," dice Bonet Ramón, "es aquel sucesor a quien es atribuida la totalidad de las relaciones patrimoniales del difunto, o una parte alícuota de aquellas, independientemente del nombre con que sea designado; legatario es el sucesor en bienes o derechos determinados." *Código Civil Comentado*, pág. 513.

■ Por ser el tercio libre dejado por este testador a sus nietos, herencia y no legado, ha de sufrir la nulidad de la institución de herederos provocada por la preterición de la legitimaria recurrida. La sanción de nulidad provista por el Art. 742 para la preterición de heredero no se detiene, como la dispuesta para caso de desheredación sin causa (Art. 776), en lo que perjudique la legítima. Es penalidad especial que en las circunstancias del presente caso conlleva la cancelación de la autonomía que sobre el tercio de libre disposición confiere al testador el Art. 737 del Código Civil (31 L.P.R.A. sec. 2363), desprovista de eficacia y valor ético la voluntad usada para burlar los derechos de un heredero forzoso. La institución de heredero se anula en absoluto y se abre *para*

*toda la herencia* la sucesión intestada. A tenor del Art. 742 sólo subsisten, y eso en cuanto no sean inoficiosas, las mandas y mejoras. "Debe, pues, entenderse que la anulación es completa o total, y que este artículo [742 P.R.], como especial en el caso que le motiva, rige con preferencia al 817" (745).[3]

*Se ajusta a Derecho la sentencia recurrida que al anular la institución de herederos, abrió la sucesión respetando únicamente la asignación del tercio de mejora. Confirmada.*

El Juez Asociado Señor Rigau no intervino.

---

[3] Manresa, *Comentarios al Código Civil Español,* Tomo 6, Vol. 1, pág. 656, ed. 1973.

Art. 745 (31 L.P.R.A. sec. 2371).—"Las disposiciones testamentarias que mengüen la legítima de los herederos forzosos se reducirán a petición de éstos, en lo que fueren inoficiosas o excesivas."